UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MOBILE MOTHERBOARD INC.,

    Plaintiff,

      v.

AIOEXPC, ALADAWN, and AKLWY,

    Defendants.

No. 24 CV 8703

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiff Mobile Motherboard, Inc. owns the right, title, and assignment of United States Reissued Patent No. RE48,365. The patent describes a computer system including a handholdable and portable motherboard. Defendants AIOEXPC, ALADAWN, and AKLWY are sellers of personal computer sticks that Mobile Motherboard alleges infringes its patent. Mobile Motherboard seeks a preliminary injunction enjoining defendants from infringing on its patent.

I.    **Legal Standards**

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a preliminary injunction must establish "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Incyte Corp. v. Sun Pharm. Indus., Ltd.*, 135 F.4th 1381, 1383 (Fed. Cir. 2025) (quoting *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed Cir. 2016)). While I look to Seventh Circuit law on preliminary injunctions,

Federal Circuit precedent applies "insofar as it reflects considerations specific to patent issues." *BlephEx, LLC v. Myco Indus.*, 24 F.4th 1391, 1400 (Fed. Cir. 2022).

## II. Facts

Plaintiff Mobile Motherboard Inc. owns the right, title, and interest in Reissued Patent No. RE48,365. [29] ¶ 6–7.[1] The patent is for a computer system made up of a computer box with internal circuitry and communication ports and a separate, portable, and handholdable motherboard that connects externally to the computer box and enables the computer box to perform computing operations, or, if the computer box is one with a processor, to boost the computing power of the computer box's processor. [29-4] at 2, 17, 19.

Defendants AIOEXPC, ALADAWN, and AKLWY are Chinese companies who make and sell products, including a handheld computer stick. [29] ¶ 9. Mobile Motherboard alleges that the handheld computer sticks that defendants sell infringe its patent. [29] ¶ 10.

## III. Analysis

### A. Preliminary Injunction

#### 1. *Likelihood of Success on the Merits*

Mobile Motherboard needs to show that it "is likely to succeed on the merits." *BlephEx*, 24 F.4th at 1398. To show likelihood of success on the merits, a patentee must show (1) its infringement claims will likely overcome any validity or

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed on the top of filings. The facts are taken from the plaintiff's amended complaint, [29], and copy of the '365 patent [29-4].

enforceability challenges to its patent and (2) it will likely show infringement. *Natera, Inc. v. NeoGenomics Labs., Inc.*, 106 F.4th 1369, 1375 (Fed. Cir. 2024). If the defendant does not challenge the validity of the patent, the "very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing likelihood of success on the validity issue." *BlephEx*, 24 F.4th at 1399 (quoting *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009)). A district court does not have an obligation to construe a patent's claims at this stage of the proceedings. *Natera*, 106 F.4th at 1375.

The defendants here do not challenge the validity of the patent. Mobile Motherboard has satisfied its burden of showing the likelihood of success on the issue of validity. The defendants do challenge Mobile Motherboard's likelihood of success on the issue of infringement. They argue that their products do not directly infringe the patent because each independent claim of the '365 patent requires a computer box with a housing (i.e., a monitor)—something the defendants' devices do not have. They argue that their products are complete computer systems, while the patent only covers motherboards. They also argue that their products do not include separate northbridge and southbridge circuitry, which they say is part of the patent.

The defendants also contend that they do not indirectly infringe the '365 patent because the complaint does not specify a direct infringer, and even if it did, the product does not include a monitor or separate northbridge and southbridge components.

3

a.    Direct Infringement

Direct infringement generally requires a court to determine the scope and meaning of the claims asserted and then compare the properly construed claims to the allegedly infringing device. *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1350 (Fed. Cir. 2022). To prove direct infringement the patentee must show that "the accused device contains *each and every limitation* of the asserted claims." *SIMO Holdings, Inc. v. H.K. uCloudlink Network Tech., Ltd.*, 983 F.3d 1367, 1380 (Fed. Cir. 2021) (quoting *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1215 (Fed. Cir. 2014)) (emphasis in original).

The defendants argue that the patent requires a separate piece of equipment, like a monitor, but that they do not sell their device with this equipment. [26] at 7–8. They also say that their products are "complete computer systems," and that Mobile Motherboard's limitation does not cover a complete computer system like defendants'. [26] at 10–11. They say their products can simply be connected to a keyboard and display to operate like a regular PC. [26] at 12–14. Defendants point to the prosecution history of the patent, where Mobile Motherboard said its product is not a complete computer system, and requires more than just a connection to a keyboard and display to act as a regular PC. [26] at 11–12; [26-4] at 18.

Independent Claim 1 of the patent describes a computer system that is made up of a computer box without a processor for performing computer operations and an external, portable, and handholdable motherboard with a central processor that "enables said computer box to perform computing operations." [29-4] at 19. Independent Claim 11 of the patent describes a computer system that is made up of

4

a computer box that has a central processor, and an external, portable, and handholdable motherboard with a second central processor that "enables said second central processor to add to the central processing functions of said first *central* processor." [29-4] at 19 (emphasis in original). Finally, Independent Claim 23 describes a computer system made up of a computer box and an external, portable, and handholdable motherboard that "enables said computer box to perform computing operations." [29-4] at 19. The parties both provide an example of the computer box: a monitor.

The defendants do not sell a separate "computer box" external to their product. Without a computer box, the products themselves do not infringe, because the device does not contain every limitation of the asserted claims. *SIMO Holdings*, 983 F.3d at 1380. Plaintiff doesn't dispute this point; defendants' sticks are not infringing by themselves. Instead, plaintiff argues that defendants *use* their products in a way that infringes, as shown in their marketing materials, by plugging their products into monitors, TVs, or projectors. [30] at 6. The defendants display photos on their online storefronts of their products plugged into a monitor and advertise that their products can be plugged into a monitor. *See* [20-7] at 5, 9, 20, 24, 61, 63, 72, 91, 97–98.

If the defendants' products enabled the depicted monitor to perform computing operations, their products infringed patent claims 1 and 23 in that depiction. But Mobile Motherboard has not shown any evidence that defendants' products "enable the [monitor] to perform computing operations." Mobile Motherboard has not put forth any evidence to show that the defendants' products are allowing the computer

5

box to perform the computing operations, rather than the external stick performing all the computing operations itself and displaying them through a monitor or other device. Because the connection of the motherboard enabling the computer box to perform computing operations is a limitation of both Independent Claim 1 and Independent Claim 23, Mobile Motherboard has not shown a likelihood of success on the issue of infringement of Independent Claims 1 and 23 and their dependent claims.

Independent Claim 11 covers the connection of a mobile motherboard to a computer box that already has a central processor; for example, plugging the mobile motherboard into a laptop computer to boost processing power. The claim requires the connection of the mobile motherboard to "enable[ the] second central processor [of the mobile motherboard] to add to the central processing functions of" the first central processor in the external device. [29-4] at 19. Mobile Motherboard has presented no evidence that the defendants' products have been plugged into a computer box with a central processor, and that in doing so, enabled the product to boost the processing functions of the computer box's processor. Mobile Motherboard has not shown a likelihood of success on the issue of infringement of Claim 11 and its dependent claims.

Mobile Motherboard may be able to prove infringement after a *Markman* hearing to determine what claim terms such as "computer box," "enabling," "performing computing operations," and "enabling the computer box to perform computing operations" mean to someone skilled in the art. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). At this stage, though, neither

6

party has presented a claim construction dispute, and so I need not definitively construe the claims. *Natera*, 106 F.4th at 1375.

To the extent that defendants also claim that the patent requires two separate northbridge and southbridge chipsets, and that their products contain one chip that includes both a northbridge and southbridge, their argument is unpersuasive. Nothing in the patent requires two separate chipsets, nor does the prosecution history require separate components for the northbridge and southbridge. While Mobile Motherboard put forth alternative embodiments of the invention that encompass the "one or more second communication port" language of the patent, there is nothing that requires there to be two or more second communication ports—just that there *could* be, and that would still be covered by the patent language.

b.      Indirect Infringement

Plaintiffs also claim that even if defendants have not directly infringed, they may still be liable for indirect infringement, either through induced infringement or contributory infringement. "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Induced infringement requires that the accused infringer specifically intends for another party to infringe the patent and that the other party's acts constitute infringement. *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 46 (Fed. Cir. 2024) (internal quotations omitted). Contributory infringement requires that (1) the defendant had "knowledge of the patent in suit," (2) the defendant had "knowledge of patent infringement," and (3) the accused product is "not a staple or article or commodity of commerce suitable for a substantial non-infringing use." *Id.* at 47. In either case, there must be infringement of the patent in

suit. But as discussed, Mobile Motherboard has not shown that the defendants likely infringed the '365 patent, because it has not put forth evidence that all of the claim limitations for each alleged infringed claim were met. Mobile Motherboard has not shown it is likely to prove indirect infringement.

### 2. *Irreparable Harm*

Mobile Motherboard has also not shown it will suffer irreparable harm. A party seeking a preliminary injunction must show it is likely to suffer irreparable harm. *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022). Harm is irreparable if legal remedies are "seriously deficient as compared to the harm suffered." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021) (quoting *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003)). To show irreparable harm, the alleged injury must be non-quantifiable and not adequately able to be compensated—no monetary damages could address the harm. *Natera*, 106 F.4th at 1378; *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017). The mere possibility or speculation of harm is insufficient; there needs to be some evidence of the harm. *Koninklijke Philips*, 39 F.4th at 1380. Bare assertions of harm are not enough to show irreparable injury. *Id.*

Mobile Motherboard alleges that its irreparable harms include loss of goodwill, damage to reputation, and loss of control over intellectual property rights. *See* [20-1] at 8–9. It also says that the ability to collect monetary damages as a remedy is uncertain, and that the right to exclude others from using its patent is a factor in determining irreparable harm. [20-1] at 9–10. In support, Mobile Motherboard has submitted an affidavit by its president and the inventor of the mobile motherboard

patented in the Reissued Patent '365. [20-3] ¶¶ 3–4. He says in the affidavit that Mobile Motherboard's "goodwill and reputation are irreparably damaged by the making, using, offering for sale, selling, or importing of goods that infringe the Patent," and that Mobile Motherboard is irreparably harmed because "infringers remove Mobile Motherboard's ability to control the nature and quality of the Infringing Products." [20-3] ¶¶ 12–13. However, these statements are bare assertions of harm, and Mobile Motherboard provides no other evidence, nor does it make any arguments, for how its goodwill and reputation have been harmed by the defendant's alleged infringement.

Mobile Motherboard also argues that its ability to collect damages as a remedy is uncertain, because defendants have moved their sales revenue out of their Amazon accounts. It is not clear where the money has gone, but Mobile Motherboard maintains that defendants could easily move funds into foreign banks outside the jurisdiction of the court. [20-1] at 10. But defendants have appeared. They are actively participating in litigation. There is no reason to think that they would not comply with a court order of damages should Mobile Motherboard prove infringement.

Finally, Mobile Motherhood argues that it is irreparably harmed because "infringers remove Mobile Motherboard's ability to control the nature and quality of the Infringing Products," and because of the loss of exclusivity. [20-3] ¶ 14. While the nature of patent rights, including the right to exclude, is a factor in the irreparable harm inquiry, it is not, on its own, enough to show irreparable harm. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011). Because it is the only

irreparable harm that Mobile Motherboard can show at this stage, Mobile Motherboard has not established that it will be irreparably harmed absent an injunction.

### 3.    Balance of Equities and Public Interest

In balancing the equities, I must weigh the harm to the moving party if the injunction is not granted against the harm to the non-moving party if the injunction is granted. *Metalcraft*, 848 F.3d at 1369.

Mobile Motherboard has not shown a likelihood of success on the merits of its patent infringement claim against the defendants, nor has it shown irreparable harm. Defendants would be harmed by an injunction against conduct that has not been shown to likely be infringement—they would not be able to sell their products, and their businesses would suffer losses even though it was not likely that they infringed a patent. On the other hand, because Mobile Motherboard has not shown a likelihood of success, the harm to it in not having an injunction is minimal. And should Mobile Motherboard later prove infringement, the alleged harm could be redressed with monetary damages and equitable relief at that stage.

I also must "balance the patentee's rights with any adverse effects on the public," and should "focus on whether a critical public interest would be injured by the grant of injunctive relief." *Natera*, 106 F.4th at 1380 (internal quotations omitted). This is ultimately a private dispute that does not cry out for the "extraordinary remedy" of a preliminary injunction. *Winter*, 555 U.S. at 24. The balance of equities and public interest do not favor granting an injunction.

10

**B.     Judgment on the Pleadings**

Defendants move for judgment on the pleadings. "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The party moving can use this motion "to dispose of the case on the basis of the underlying substantive merits." *Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 518 (7th Cir. 2025). When a defendant files a motion for judgment on the pleadings to challenge the sufficiency of the complaint, the complaint must, taking all factual allegations as true, "raise a right to relief above the speculative level." *Id.* at 518–19 (applying the Rule 12(b)(6) standard to sufficiency challenges).

Although I have found that Mobile Motherboard is not likely to succeed on the merits, the standard for judgment on the pleadings based on sufficiency of the allegations is whether the complaint sets forth a set of facts that, taken as true, support a reasonable inference that defendants have infringed Patent '365. *See Wolf*, 132 F.4th at 519. I will address defendants' motion for judgment on the pleadings after it is fully briefed.

11

## IV.    Conclusion

Mobile Motherboard's motion for a preliminary injunction, [20], is denied. Plaintiff shall respond to the motion for judgment on the pleadings, [38], by 6/17/25 and defendants may reply by 7/17/25. The parties' status report on discovery progress remains due on 7/30/25.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: May 27, 2025